UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| MITCHELL SEID, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 2:14-CV-31 NAB |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Mitchell Seid's ("Seid") appeal regarding the discontinuation of his disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.     Background**

Seid received an award of disability insurance benefits, beginning July 2008, due to listing level affective mood disorder and anxiety. (Tr. 57, 62-65, 105.)  In accordance with social security law and regulations, the Social Security Administration performed a continuing disability review pursuant to 20 C.F.R. § 404.1589.  On March 26, 2012, the Social Security Administration determined that Seid's health had improved and he was able to work as of March 15, 2012. (Tr. 79-82.)  Seid filed an appeal before a disability hearing officer and a hearing was

held on August 8, 2012. (Tr. 103-110.) The disability hearing officer determined that Seid's medical condition had improved and his disability had ceased. (Tr. 110.)

The Social Security Administration granted Seid's timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 111-116.) An administrative hearing was held on January 15, 2013. (Tr. 33- 56.) The ALJ issued a written decision affirming the denial of benefits on March 21, 2013. (Tr. 14-28.) Seid requested a review of the ALJ's decision from the Appeals Council. (Tr. 9.) On January 14, 2014, the Appeals Council denied Seid's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Seid filed this appeal on March 12, 2014. [Doc. 1.] The Commissioner filed an Answer and Administrative Transcript on May 15, 2014. [Docs. 11, 12.] Seid filed a Brief in Support of Complaint on June 16, 2014. [Doc. 13.] The Commissioner filed a Brief in Support of the Answer on September 4, 2014. [Doc. 18.]

## II. Standard of Review

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

The continuing disability review process is governed by a sequential analysis contained in 20 C.F.R. § 404.1594(f).

> The regulations provide that determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine the following: (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Dixon v. Barnhart*, 324 F.3d 997, 1000-01 (8th Cir. 2003). "When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the

claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (*citing* 42 U.S.C. § 423(f)). "The medical improvement standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Delph*, 538 F.3d at 945.

## III. Summary of Evidence Before the ALJ

### A. Administrative Hearing

The ALJ heard testimony from Seid and Vocational Expert Alissa Smith. Seid was represented by a personal representative.

#### 1. Seid's Testimony

Seid testified that he was thirty-one years old at the time of the hearing. (Tr. 38.) He lived alone and his kids visit three to four days a week. (Tr. 38.) Seid's education included some college, but he did not receive a degree. (Tr. 39.) Seid had many jobs, including telemarketing and sales. (Tr. 39-43.) He has not worked at any job for a long period of time where he has not been fired. (Tr. 43.) He was fired from his jobs for lack of focus, not staying on task, and arguing with his supervisors. (Tr. 40-42.)

Seid testified that he is able to maintain his personal care, do laundry, wash dishes, take out the trash, and vacuum, but he does not do it as often as he should. (Tr. 43-44.) His attention deficit hyperactivity disorder ("ADHD") makes it hard to stay focused on tasks and he gets sidetracked easily and forgets things. (Tr. 44.) He becomes depressed a lot. (Tr. 45.) He testified that he has bad days where he doesn't do much and just stays in bed. (Tr. 45.) His bad days occur about a minimum of three days per week, if not four or five. (Tr. 45.) His bipolar disorder causes him to have lots of mood swings. (Tr. 46.) At least two or three nights a week,

he has problems sleeping. (Tr. 46.) He thinks about suicide, but does not believe he would act on it. (Tr. 47.)

Seid testified that he goes to the doctor just to get his medication. (Tr. 48.) Seid stated that he could try to work, but it is the same result in the end. (Tr. 48.) He would have problems with focus and getting along with his boss. (Tr. 48.) He would like a job where he could get paid to stay home and not have to show up, but he doesn't think that job exists. (Tr. 49.) Nothing has changed with his impairments. (Tr. 49.) If he lost his benefits and did not have medicine, he would not be able to function at all. (Tr. 50.)

### 2. Vocational Expert Testimony

Vocational Expert Alissa Smith testified that a hypothetical person with Seid's age, work experience, and education who had no exertional limitations, but was limited to unskilled work with no contact with the general public and only occasional contact with co-workers and supervisors would be precluded from Seid's past relevant work. (Tr. 54.) She opined that the hypothetical person would be able to perform the jobs of hospital cleaner, dishwasher, and order filler. (Tr. 54-55.) She also testified that a hypothetical person of Seid's age, work experience, and education who was off task at least twenty percent of the time or absent from work two to four times each month would be unable to perform Seid's past relevant work or any work in the national economy. (Tr. 54.)

### B.  Medical Record

Seid received medical care from Ventura County Medical Center in California from 2008 to 2010. (Tr. 321-365.) He received treatment for severe ADHD, anxiety, obsessive compulsive disorder, depression, marijuana abuse, and bipolar disorder not otherwise specified. Seid received treatment from Community Medical Associates in Missouri from 2011 to 2013. (Tr.

5

214-244, 275-292, 367-406.)  Seid's primary care physician, Dr. James Bowers treated him for a variety of physical and mental impairments, including depression, anxiety, hypertension, ADHD, bipolar disorder, tooth pain, burns, chronic rhinitis, tachycardia, dental caries, and asthma.  Seid also received treatment from Dr. Jerry Wait, Dr. David Dollins, and Dr. Waclaw Dymek.  Seid's mental status examinations at Community Medical Associates were substantially normal.  (Tr. 215-216, 219-220, 223-224, 226, 231, 239, 275, 277, 367-369, 372, 374, 380, 386, 388, 390, 394, 396, 398, 401, 403, 406.)  On most visits, Seid reported no symptoms including being distracted by extraneous stimuli, not listening when spoken to, fidgeting, being unable to stay in seat, or blurting out or interrupting others.  (Tr. 218, 220, 222, 229, 231, 232, 239, 275, 367, 384, 393, 395, 397, 400, 405.)  On November 28, 2011, Dr. Wait stated that he would not prescribe Seid any more amphetamines without a psychological evaluation.  (Tr. 216-217.)  Dr. Bowers agreed and referred Seid to Dr. Richard Hall for a mental health evaluation for ADHD.  (Tr. 214, 216.)  Dr. Hall then held counseling sessions and recommended medications for Seid between March 2012 and May 2013.  (Tr. 310-320, 407-417.)

Dr. Hall completed two opinions regarding Seid's functional limitations.  (Tr. 366, 412-417.)  Dr. Brooke J. D. Preylo also completed a psychological consultative evaluation regarding Seid's functional limitations.  (Tr. 250-254.)  Dr. Keith L. Allen and Dr. Martin Isenberg reviewed Seid's medical records and completed Psychiatric Review Techniques and Mental Residual Functional Capacity Assessments about Seid's functional limitations.  (Tr. 260-274, 293-307.)

**IV.     ALJ Decision**

The ALJ determined that at the time of the comparison point decision ("CPD") of July 15, 2008, Seid had the medically determinable impairments of affective disorders and anxiety disorder, which met listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.) The ALJ found that through March 15, 2012, the date Seid's disability ended, he did not engage in substantial gainful activity. (Tr. 16.) The ALJ also found that Seid continued to have the same impairments and did not develop any additional severe impairments after the CPD through March 15, 2012. (Tr. 16.) The ALJ determined that Seid did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and medical improvement occurred as of March 15, 2012. (Tr. 16-17.) Next, the ALJ found that the medical improvement was related to work, because as of March 15, 2012, Seid no longer had an impairment or combination of impairments that met the same listing (12.04) that was met at the time of the CPD. (Tr. 21.) The ALJ also found, however, that Seid's impairments were severe and continued to be severe impairments through the date of the decision. (Tr. 21.) Next, the ALJ determined that, as of March 15, 2012, Seid had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the non-exertional limitations of simple, unskilled work with no contact with the general public and only occasional contact with coworkers and supervisors. (Tr. 22.) The ALJ also determined that Seid was unable to perform any of his past relevant work, but that there were a significant number of jobs in the national economy that he could perform. (Tr. 26-27.) Finally, the ALJ concluded that Seid's disability ended as of March 15, 2012 and he has not become disabled again since that date. (Tr. 28.)

## V. Discussion

Seid presents two issues for review. First, Seid asserts that the administrative law judge ("ALJ") failed to properly weigh the opinion of his treating physician, Dr. Hall. Second, he contends that the ALJ's RFC determination is not supported by substantial evidence.

### A. Dr. Hall's Opinion

First, Seid contends that that the ALJ failed to properly analyze Dr. Hall's opinion and give good reasons for dismissing the limitations contained in his opinion. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

In this case, the ALJ gave little weight to the February 5, 2013 opinion of Seid's treating psychologist, Dr. Hall. (Tr. 25.) The ALJ states, without any further explanation, that Dr. Hall's opinion was contradicted by his own treatment notes. (Tr. 25.) Dr. Hall began treating Seid on March 1, 2012. (Tr. 314-320.) At the initial visit with Dr. Hall, Seid completed a Beck Depression Inventory[1], which indicated the mild range of clinical depression. (Tr. 314, 318-320.) Dr. Hall observed that Seid was alert, aware, and cooperative and oriented to time, place, and self. (Tr. 314.) He also noted that Seid's insight and judgment were intact and adequate. (Tr. 314.) Dr. Hall diagnosed Seid with ADHD and major depressive disorder, recurrent without psychosis. (Tr. 314.) He opined that Seid's global assessment functioning[2] ("GAF") score was 65, which indicated mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. DSM-IV-TR at 34. The treatment notes from October 2012 to May 2013 focus on Seid's application for social security disability benefits and

---

[1] The Beck Depression Inventory is a "twenty-one item, self-report rating inventory that measures characteristic attitudes and symptoms of depression." *Perry v. Colvin*, No. 13-1185 JNE/TNL, 2014 WL 4113015 at *12, no. 12 (D. Minn. Aug. 20, 2014).
[2] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

9

how Seid feels about the discontinuation of benefits. (Tr. 311-313, 407-411.) Dr. Hall also wrote that Seid had bipolar disorder. (Tr. 312-313, 408.) Dr. Hall noted that Seid was beginning to progress in therapy. (Tr. 311.)

Dr. Hall completed two opinions regarding Seid. On February 5, 2013, Dr. Seid completed a Mental Medical Source Statement ("MMSS"). (Tr. 366.) In the MMSS, Dr. Hall wrote that anxiety, depression, mood disorder, and ADHD affected Seid's ability to work. Dr. Hall indicated that Seid would likely be absent 3 times per month as a result of his impairment, symptoms, or treatment. (Tr. 366.) Using a checklist, Dr. Hall opined that Seid's symptoms would interfere with his ability to get along with and function with others cooperatively in a work setting 61% to 100% of the time. (Tr. 366.) He also opined that Seid would be off-task in a work setting 61% to 100% of the time. (Tr. 366.) Further, he opined that Seid would be limited in his ability to focus, organize, complete work tasks timely, and handle work demands, persistence, and expectations 61% to 100% of the time. (Tr. 366.)

Dr. Hall also completed a Mental Impairment Medical Source Statement (MIMSS) on August 29, 2013[3]. (Tr. 412-417.) In the MIMSS, Dr. Hall diagnosed Seid with major depression and ADHD. (Tr. 412.) He opined that Seid's GAF score currently and for the past year was 65. (Tr. 412.) Dr. Hall indicated that Seid's symptoms included mood disturbance (major depression), psychomotor agitation, and difficulty concentrating. (Tr. 413.) He also noted that Seid's Beck Inventory score placed him in the mild range of depression. (Tr. 413.) He wrote

---

[3] Seid submitted the MIMSS to the Appeals Council after the ALJ's decision. In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622). Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012) (citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)).

that Seid was responding to prescribed medication by his primary care physician and there were no known side effects. (Tr. 413-414.) Dr. Hall estimated that Seid's impairments or treatment would cause him to be absent from work about twice a month. (Tr. 414.) He indicated in a checklist that Seid had poor or no ability to maintain attention for a two hour segment, sustain an ordinary routine without supervision, perform at a consistent pace without an unreasonable number and length of rest periods, or carry out detailed instructions. (Tr. 415-416.) He opined that Seid had constant deficiencies of concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner and three or more repeated episodes of deterioration or decompensation in work or work like settings. (Tr. 416.)

Based on the Court's review of the record as a whole, the Court finds that the ALJ did not err in giving little weight to Dr. Hall's opinion. His opinions are inconsistent with his treatment notes. For example, Dr. Hall's opinions indicate that Seid's impairments include ADHD and major depression, but his treatment notes also indicate bipolar disorder. Dr. Hall's treatment notes also do not support the limitations contained in the opinions. Most of the treatment notes reflect that Seid is depressed regarding the status of his disability benefits. The notes contain no substantive information regarding limitations in concentration, persistence, or pace. There is also no support anywhere else in the record that Seid would be unable to function regarding concentration, persistence, or pace 61% to 100% of the time. Finally, the GAF score given by Dr. Hall for the year he treated Seid indicated mild symptoms in social, school, and occupational functioning. Therefore, the Court finds that the ALJ did not err in his evaluation of Dr. Hall's opinion.

## B. RFC Determination

Next, Seid contends that the ALJ's RFC determination is not supported by substantial evidence. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[4] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino*, 578 F.3d at 879. "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). Seid contends that the case should be remanded so that the ALJ can obtain medical evidence in support of the RFC. Seid also states that his testimony supports his contention that he is unable to perform any competitive work.

The ALJ's opinion demonstrates a very thorough review of the evidence. The RFC determination is well supported by Seid's activities of daily living, the medical evidence in the record, the consultative examination completed by Dr. Brooke J. D. Preylo and the non-

---

[4] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

examining consultative opinions of Dr. Allen and Dr. Isenberg. As to Seid's credibility, the Court finds that the ALJ's credibility determination was also supported by substantial evidence. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any participating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions

*Id.* "The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints." *Masterson,* 363 F.3d at 738. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen,* 862 F.2d 176, 179 (8th Cir. 1988).

A review of the record indicates that Seid's activities of daily living do not support his allegations regarding functional limitations. His symptoms were well controlled by medication. He did not require medication management by a psychiatrist. He only received mental health

treatment from a specialist, because his doctors refused to give him additional medication without a mental health evaluation. *See Wildman v. Astrue,* 596 F.3d 959, 965 (an impairment controlled by treatment or medication cannot be considered disabling); *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'"); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers). Seid has some restrictions in his functioning and ability to perform work related activities; however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Based upon a review of the evidence in the record as a whole, the Court finds that the RFC determination is supported by substantial evidence. Therefore, the Commissioner's decision will be affirmed.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's determination that Seid's disability ended March 15, 2012 is supported by substantial evidence in the record as a whole. The Commissioner's final decision to discontinue benefits will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 13.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 3rd day of March, 2015.

                                                /s/ Nannette A. Baker
                                            NANNETTE A. BAKER
                                            UNITED STATES MAGISTRATE JUDGE